*1043 OPINION OF THE COURT
Jack M. Battaglia, J.
Scantron Corporation is seeking payment of invoices totaling $3,097.74 for goods sold and delivered to the New York City Board of Education. One invoice, dated March 27, 2000, was addressed to “PS 98 Shorackappock,” and is in the amount of $1,267.74; the other, dated May 10, 2000, was addressed to “Manhattan School District #6,” and is in the amount of $1,830; both state payment terms of “net 30 days.”
When the invoices were not paid, Scantron representatives made telephone inquiries concerning payment. Each of these inquiries was documented by an “Invoice Activity: Contact Record,” and the copies submitted bear dates beginning on August 18 and ending October 6. Although each record lists one or the other invoice number or “customer name,” the primary contact person appears to have been the same, as was the person who bore ultimate responsibility for payment.
On October 16, 2000, a “Final Notice” was sent with respect to the March 27 bill, stating that, unless payment was received by October 25, “our collection representative . . . will immediately proceed with collection action.” On January 16, 2001, a “Final Notice” was sent with respect to the May 10 bill, demanding payment by January 25. According to an affidavit of Scantron’s Director of Customer Accounting, the Board “never issued a written denial to those demands for payment.” There is no other evidence of an express denial, but notations on the records of the telephone inquiries — specifically, “wanting to return product” and “[d]uplicate shipment” — suggest at least a problem with the transaction(s).
On May 30, 2001, a notice of claim was received by the Board of Review of the Board of Education, and on November 1, 2001, an amended summons and verified complaint was received by the Board of Review. In lieu of answering, the Board of Education filed and served the instant motion to dismiss, prompting a cross motion for summary judgment from Scantron. The original return date was May 6, 2002, but there were seven adjournments until March 3, 2004.
First, Scantron’s cross motion must be denied. “[The] motion was premature since issue had not been joined.” (Ronald Shapss Corporate Servs. v Fidelity Holdings, 281 AD2d 529, 530 [2d Dept 2001]; see also CPLR 3212 [a].) There is nothing in any of the papers that indicates that the Board of Education joined *1044 Scantron in charting a summary judgment course. (See Kline v Town of Guilderland, 289 AD2d 741, 741 n [3d Dept 2001]; Vasinkevich v Elm Drugs, 208 AD2d 522, 523 [2d Dept 1994].)
The Board of Education seeks dismissal of the action pursuant to CPLR 3211 (a) (1), (5) and (7). The Board contends that the notice of claim was presented too late to comply with Education Law § 3813 (1), and that the action was commenced too late to comply with section 3813 (2-b) of the same statute. At least in the first instance, the Board’s motion is based only on the filed notice of claim and amended verified complaint, neither of which shows a date relevant to the underlying transaction(s) later than April 3, 2000.
Education Law § 3813 (1) requires that “a written verified claim . . . [be] presented to the governing body of [the] district or school within three months after the accrual of such claim ... In the case of an action . . . for monies due arising out of contract, accrual of such claim shall be deemed to have occurred as of the date payment for the amount claimed was denied.” Education Law § 3813 (2-b) provides that “no action . . . shall be commenced . . . more than one year after the cause of action arose.”
It should be immediately apparent that the time for filing the notice of claim is measured from the “accrual of such claim,” whereas the time for commencing an action is measured from when the “cause of action arose.” Moreover, for contract actions the statute specifies the event that determines “accrual” of the “claim,” i.e., its denial, but does not specify when the “cause of action” “arises.” Case law has expanded upon the statutory language, and, to fully appreciate the significance, it is important to review both the statute and relevant case law prior to the statute’s amendment in 1992.
Prior to its amendment, Education Law § 3813 (1) did not specify the event that determined “accrual” of a “claim” for payment on a contract. “For contracts entered into before July 17, 1992, a claim accrues, and the three-month period begins to run, when the contractor’s damages become ascertainable . . . As a general rule, damages are considered ascertainable under this standard once the work is substantially complete, or a detailed invoice of the work has been submitted.” (Suburban Restoration Co. v Wappingers Cent. School Dist., 256 AD2d 572, 572 [2d Dept 1998]; see also Matter of Board of Educ. of Enlarged Ogdensburg City School Dist. [Wager Constr. Corp.], 37 NY2d 283, 290 [1975].) Under the prior law, therefore, Scant *1045 ron’s claim(s) accrued when it submitted the invoices, or, at the latest, at the expiration of the 30 days for payment. (See Hall-Kimbrell Envtl. Servs. v East Ramapo Cent. School Dist., 177 AD2d 56, 59 [3d Dept 1992].)
For purposes, however, of the limitations period in Education Law § 3813 (2-b), a different standard applies. “[T]he term ‘claim accrued’ is not necessarily equatable with the term ‘cause of action accrued.’ ” (Henry Boeckmann, Jr. & Assoc. v Board of Educ., Hempstead Union Free School Dist. No. 1, 207 AD2d 773, 775 [2d Dept 1994].) The limitations period does not begin to run “until the time of the breach ... A breach of contract can be said to occur when the claimant’s bill is expressly rejected, or when the ‘party seeking payment should have viewed his claim as having been constructively rejected.’ ” (Id. at 775, quoting Helmer-Cronin Constr. v Beacon Community Dev. Agency, 156 AD2d 543, 544 [2d Dept 1989]; see also Spoleta Constr. & Dev. Corp. v Board of Educ. of Byron-Bergen Cent. School Dist., 221 AD2d 927, 928 [4th Dept 1995].)
As previously noted, Education Law § 3813 (1) was amended to specify for contract actions that a claim accrues, and the three-month period for filing a notice of claim begins to run, “as of the date payment of the amount claimed was denied.” The memorandum in support of the amendment describes its purpose.
“Recent case decisions indicate that such claims can accrue without regard to the status of project completion or, for that matter, any formal denial of payment. . .
“The courts’ interpretation on this issue makes no sense. Any contractor’s invoice, or other request for payment for work substantially completed, can be deemed to set ascertainable ‘damages’ which, until an actual denial is received, should be seen as nothing more than a statement of the amount expected to be paid under contract.” (Mem in Support, Bill Jacket, L 1992, ch 387 [emphasis added].)
The Budget Report on Bills recommended approval of the amendment. By “establishing] a date certain for the filing of claims,” the amendment would “add precision to the existing law . . . removing the uncertainty and confusion for both contractors and school districts,” and “improving] the administration of claims for both contractors and school districts.” (Budget Report on Bills, B-201, July 9, 1992, Bill *1046 Jacket, L 1992, ch 387.) The State Education Department supported the amendment “because it adds precision to the law in setting forth a time certain when the claim comes into existence.” (Letter from Lizette A. Cantres, Counsel and Deputy Commissioner for Legal Affairs, to Counsel to Governor, June 24, 1992, Bill Jacket, L 1992, ch 387.)
This legislative history would suggest that the statutory purpose of the amendment would be most effectively advanced by giving literal effect to the statutory language “payment . . . was denied.” So understood, the three-month period would not commence until there had been an express denial of payment. Scantron essentially argues for that interpretation on this motion. The problem is that, in the absence of an express denial, the three-month period would never begin to run, while the one-year limitations period, triggered by a “constructive rejection,” would both run and run out. It seems unlikely that the Legislature would have intended that result.
Cases applying Education Law § 3813 (1) as amended in 1992 do not require that an express denial be made for the three-month period to begin to run. Rather, they apply to the three-month period of section 3813 (1) the “constructive rejection” concept that had been applied to the one-year period of section 3813 (2-b), with the result that both periods would begin to run at the same time in most cases. (See Alfred Santini & Co. v City of New York, 266 AD2d 119, 120 [1st Dept 1999]; Dodge, Chamberlin, Luzine, Weber Architects v Dutchess County Bd. of Coop. Educ. Servs., 258 AD2d 434, 435 [2d Dept 1999].) A constructive rejection will occur when “the putative debtor declines to timely respond to the claimant’s demand letter.” (Alfred Santini & Co. v City of New York, 266 AD2d at 120.) When the claimant’s letter demands payment within 20 days (see id.; see also Dodge, Chamberlin, Luzine, Weber Architects v Dutchess County Bd. of Coop. Educ. Servs., 258 AD2d at 435), “[u]pon the expiration of that period without approval or payment, the . . . claims [are] constructively rejected and [the] cause of action accrue[s].” (Id. at 435.)
The contractor’s interest in “precision” and “a date certain” is accommodated by the constructive rejection concept when the contractor’s self-declared deadline is used as the date on which the contractor should conclude that payment is not forthcoming. To the extent that uncertainty continues in the application of the statutory time periods, it is ameliorated by a “substantial compliance” doctrine that allows informal and unverified writ *1047 ings, such as an invoice or even a letter, to qualify as a notice of claim, so long as the writing is presented to the appropriate governing body. (See Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 547-549 [1983]; Allshine, C.S. v South Orangetown Cent. School Dist., 305 AD2d 617-618 [2d Dept 2003]; Mennella v Uniondale Union Free School Dist., 287 AD2d 636, 636-637 [2d Dept 2001]; Spoleta Constr. & Dev. Corp. v Board of Educ. of Byron-Bergen Cent. School Dist., 221 AD2d at 928; Hall-Kimbrell Envtl. Servs. v East Ramapo Cent. School Dist., 177 AD2d at 58; Hygrade Insulators v Board of Educ., Middle Country Cent. School Dist., 207 AD2d 430, 431 [2d Dept 1994].)
Moreover, “a school district may be estopped from asserting a notice of claim defense where its affirmative conduct has induced the other side to delay serving the notice of claim.” (Suburban Restoration Co. v Wappingers Cent. School Dist., 256 AD2d at 573.) For there to be an estoppel, the “conduct of the defendant [must] lull[ ] the plaintiff into sleeping on its rights to its detriment.” (See Conquest Cleaning Corp. v New York City School Constr. Auth., 279 AD2d 546, 547 [2d Dept 2001].) “An estoppel cannot be founded upon defendant’s failure to communicate with plaintiff in response to the bills.” (Amsterdam Wrecking & Salvage Co. v Greater Amsterdam School Dist., 83 AD2d 654, 655 [3d Dept 1981], affd 56 NY2d 828 [1982].)
Applying all this, now, to the pending motion, Scantron does not even argue that the notice of claim filed on May 30, 2001 was timely. Although Scantron contends that, notwithstanding the two separate invoices and other documents, its claim should be deemed based on a single transaction, and although there is some support for that in the record, it does not help Scantron on the three-month deadline. The latest day specified by Scantron for payment by the Board was January 25, 2001, and even allowing some time for Scantron to determine whether the check was in the mail, the notice of claim was not submitted until four months later.
Scantron relies instead on the original invoices. Although there may be circumstances in which invoices might satisfy the notice of claim requirement under the amended statute, those circumstances are not present here. Accepting Scantron’s position on these facts would result in allowing a notice of claim of breach of contract to be presented before performance under the contract, i.e., payment, even becomes due. Furthermore, neither of the invoices was ever presented to the Board of Education, *1048 and Scantron does not even argue that PS 98 or the Manhattan School District was authorized to receive a notice of claim. The final notices suffer from the same defect.
Finally, Scantron pleads estoppel, but points to no affirmative conduct on behalf of the Board that would have lulled Scantron into sleeping on its rights, particularly after the deadlines specified in its own final notices.
Defendant New York City Board of Education’s motion to dismiss is granted.